WOODARD *v.* WALKER.

1. SPECIFIC PERFORMANCE—ORAL AGREEMENT—EVIDENCE.
   Specific performance of an oral agreement to convey defendant's farm to complainant in consideration of services, etc., for which complainant received no compensation, may be granted though he had signed a written contract to buy the farm, never enforced by the other party. While it was competent to show that the written agreement was not to be given any force, the defense should be very convincing before it could succeed.

2. SAME—WITNESSES.
   It was not a complete excuse for the absence from the stand of the defendant that he was eighty years of age, and was too nervous, and any doubts would be resolved in favor of the complainant arising from such failure to explain disputed claims.

Appeal from Livingston; Miner, J. Submitted October 8, 1915. (Docket No. 32.) Decided July 21, 1915. Rehearing denied September 27, 1916.

Bill by Henry Woodard against Thomas Walker for the specific performance of a land contract and to

enjoin the prosecution of a suit at law. From a de-
cree dismissing the bill, complainant appeals. Re-
versed, and decree entered for complainant.

*Louis E. Howlett* and *W. P. Van Winkle & Son,* for
complainant.

*Francis J. Shields* and *Shields & Silsbee,* for de-
fendant.

BIRD, J. Complainant filed his bill praying for spe-
cific enforcement of an oral contract to convey lands in
Livingston county, described as the W. ½ of the N. E.
¼ and the N. ½ of the N. E. ¼ of the N. E. ¼ of
section 29, in the township of Oceola, on the theory
that the contract had been executed. After a hearing
the chancellor declined to grant complainant any re-
lief, and dismissed his bill.

The basis of complainant's claim is that, when a
young boy, 12 or 13 years of age, he went to live with
the defendant, who at that time resided on a farm.
He alleges as a matter of belief: That his guardian
made a contract with the defendant by which he, the
complainant, was to remain with the defendant, work
for him on the farm, attend school four months each
year up to the time he was 21 years of age, at which
time he was to receive from the defendant the sum
of $300. That he remained and worked for defendant
until he was 25 or 26 years of age, and until he was
married, save one season he worked for a neighbor.
That before and after his marriage he was treated as
a member of defendant's family. He attended family
gatherings, contributed to presents given defendant
by the children, his own children were given presents
by defendant, and at defendant's suggestion he con-
tributed $100, the same as the other children, toward
the erection of a monument on the family lot in the
cemetery. That after he was married he worked on

farms as a tenant, until he and his wife purchased what was known as the Stearns farm, located some distance from defendant, for a consideration of $3,200. That subsequently and some time the latter part of the year 1888, while complainant was living upon the Stearns farm, defendant and his wife came to visit them, remaining overnight. That defendant informed him that he had obligations against the Kirk farm, and would purchase it for him if he would come and live upon it. When complainant objected because he had purchased the farm on which he was living, the defendant urged him to sell it. Later, when defendant succeeded in getting the Kirk farm, he came to visit complainant again, and told him that he had purchased the farm for him; that he felt under obligation to him, and said to him, "You can have a deed of it any time you ask for it, if it ain't in 10 years." In response to defendant's wishes complainant and his wife sold their farm. That defendant came and assisted them in settling on the Kirk farm, and said to complainant that the place was his, and he wanted him "to remain there until he was drawn away." Defendant gave as a reason why he desired complainant to go upon the Kirk farm was that he wanted him near by where he could help him in his farm work. Following this, for 23 years the complainant assisted the defendant more' or less with his farm work, and received nothing, as he claims, therefor. He further claims that he never received the $300 which was due him when he became 21 years of age, and that he never received anything for his work from the time he was 21 up to the time he was married. That soon after the complainant moved onto said farm, defendant suggested to him that he would like to have him sign a paper which Mr. Pettibone, a lawyer at Howell, had prepared, for the reason that he had taken a similar paper from his own children when he had furnished them farms. In pursu-

ance of the request, the defendant went to Mr. Pettibone's office and signed said paper, as he alleges, without having read it; that he did not care what was in the paper, because he fully trusted the defendant to do as he promised. The paper is a land contract which agrees to convey the land upon a consideration of $5,000, and is in the usual form, save a chattel mortgage clause, creating a lien upon complainant's personal property. Complainant asserts that the defendant, during the 23 years, never asked him to make any payment thereon, and he, on the other hand, never asked pay for his labor. That in the year 1911, the defendant being somewhat enfeebled by age, being at that time upwards of 80 years of age, his son Judd took charge of his matters, with whom this complainant had trouble about the sale of some gravel sold from said premises, each insisting that the consideration should be paid to him. Subsequently proceedings were commenced before a commissioner to eject complainant from the premises, and he then filed this bill to enjoin that proceeding at law, and also for the enforcement of the oral agreement.

The defendant relies upon the written contract, and insists that it should prevail instead of the alleged oral agreement. The complainant does not seek to vary the terms of the written contract, but insists that it was never intended that the written agreement should have any force. That in substance it was executed to avoid jealousy on the part of defendant's own children, and thereby to avoid trouble to himself. Inasmuch as the contest is between the original parties to the written contract, this defense is permissible under the law. *Church* v. *Case*, 110 Mich. 621 (68 N. W. 424), and cases cited. But such defense should be very convincing before it is allowed to succeed.

Complainant and his wife both testify to the oral agreement. Both testify to the fact that the defendant

and his wife urged them to sell the Stearns farm and come to live on the Kirk farm. In the main their story is a reasonable one. In corroboration of their story, they show by neighbors and acquaintances of the defendant statements which he made with reference to giving the farm to them. On one occasion the defendant stated to a neighbor whose land joined the land in question, and who was desirous of forcing a new line fence, that complainant owned the land, and that he would have to deal with him. To other neighbors he said that he had bought the Kirk farm for Henry, and wanted him to move onto it. To another he stated that he had given to a poor but worthy man a farm (evidently meaning the complainant). In making a defense to the claim of his second wife for alimony, he stated:

"The defendant, answering, admits that he is the owner of a large number of acres of land; that the title to the same is ostensibly and apparently in his name, but the whole amount of said acreage is not near the acreage named in the petition, and as to what defendant does own of said lands are subject to agreements and claims of each of his children by a former wife, so that the larger portion of the land that is in defendant's name is not his own, and is not controlled by him."

Some of the queries which naturally come to one reading the record in this case are:

1. Tested by the selfishness of the average man, would the complainant have labored as he did for defendant each year for 23 years without compensation, and without having kept any account of it, unless he had done it in pursuance of the arrangement which he claims?

2. If the old gentleman was as fond of Henry as the record forces us to believe he was, would he have deliberately sold to Henry a farm for $5,000 which, according to the testimony of farmers in that vicinity, was not worth to exceed $3,000 or $3,200 in 1888?

3. If the defendant had intended that the written agreement should be binding between them, would he not have demanded some payment thereon within 23 years, and would he have allowed payments to expire by the statute of limitations, without even asking for them?

4. Is there any significance in the fact that during the 23 years in which the old gentleman managed his own affairs the complainant was not disturbed in his possession, but as soon as his son Judd began to manage his affairs the litigation began?

5. In view of the fact that he had similar agreements with some of his children who were living upon lands which he owned, and in view of the fact that he treated the complainant as one of the family, did he not intend to do the same by him?

. These queries could all have been satisfactorily answered by Mr. Walker, had he chose to be a witness in his own behalf. Ordinarily we are called upon to deal with these questions after the party who knows the most about them is dead, and then lawyers and the courts do the best they can to determine where the truth lies, but this is an exception. Mr. Walker was alive and living in the city of Howell where this hearing was had. He owed it to the court, to himself, and to all concerned to say whether he made the oral agreement in dispute. True, the excuse made for his absence was that he was too nervous, and that it would endanger his health to be a witness. This excuse is hardly satisfactory. Notwithstanding the fact that he was nervous, an opportune time might have been selected and his testimony taken at his own home. Under such circumstances, great consideration is usually shown a feeble witness by court and counsel. Had that been done, he could have made clear matters which are now in doubt. Not having done so, I think the

doubts should be resolved in the complainant's favor, and a decree should be made, enjoining the proceedings at law and directing the defendant to make a conveyance of the premises to the complainant. Complainant will recover his costs.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.